FILED

2009 May-28  AM 11:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

**GJ#22**
**AHM//PCS: JUNE 2009**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ALABAMA

## <u>NORTHEASTERN DIVISION</u>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 5:09-cr-00154-VEH-PWG |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| TERRY HALL, also known as "Marcus" | ) | 18 U.S.C. § 371 |
| (COUNTS 1, 2, 4-13) | ) | (Conspiracy:  Count 1) |
| | ) | |
| EDDIE PRESSLEY, | ) | 18 U.S.C. § 201 |
| (COUNTS 1, 3-23) | ) | (Bribery:  Counts 2, 3) |
| | ) | |
| and | ) | 18 U.S.C. §§ 1343 and 1346 |
| | ) | (Honest Services Wire Fraud: |
| EURICA PRESSLEY, also known as | ) | Counts 4-11) |
| "Eurica Gadson," | ) | |
| (COUNTS 1, 3-23) | ) | 18 U.S.C. § 1956(h) |
| | ) | (Money Laundering Conspiracy: |
| Defendants. | ) | Count 12) |
| | ) | |
| | ) | 18 U.S.C. § 1957 |
| | ) | (Monetary Transactions in Criminal |
| | ) | Proceeds:  Counts 13-23) |
| | ) | |
| | ) | 18 U.S.C. § 982 (Criminal |
| | ) | Forfeiture) |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | (Incorporating 18 U.S.C. |
| | ) | 981(a)(1)(C)) (Criminal |
| _____) | | Forfeiture) |

## <u>SUPERSEDING INDICTMENT</u>

The Grand Jury charges:

## COUNT ONE
## 18 U.S.C. § 371
## (Bribery Conspiracy)

1.      At all times material to this Superseding Indictment:

<u>Background</u>

2.      Between approximately January 2004 and approximately November 2007, defendant TERRY HALL operated and had an interest in several companies, including Freedom Consulting and Catering Co. ("FCC"), and Total Government Allegiance ("TGA"), which had contracts with the U.S. Department of Defense and its components ("DoD") in Kuwait and elsewhere.

3.      Between approximately 2005 and approximately 2007, defendant TERRY HALL's companies received over $21 million from the DoD.  DoD paid money to HALL's companies in connection with contracts and blanket purchase agreements ("BPAs") for, among other things, bottled water and security fencing for the DoD in Kuwait and Iraq.  BPAs are contracts in which the DoD agrees to pay a contractor a specified price for supplies and may order quantities of such supplies.  Pursuant to a BPA, DoD orders the supplies on an as-needed basis. The contractor is then obligated to deliver the supplies ordered at the agreed-upon price.  The term for such an order by the DoD is a "call."

4.      From approximately October 2004 to approximately October 2005,

defendant EDDIE PRESSLEY was a Major in the U.S. Army deployed as a contracting specialist to Camp Arifjan in Kuwait.

5.     Defendant EURICA PRESSLEY was the wife of defendant EDDIE PRESSLEY and lived in the Northern District of Alabama.  At the behest of EDDIE PRESSLEY, EURICA PRESSLEY arranged for an entity named EGP Business Solutions, Inc. ("EGP") to be incorporated and a bank account to be opened in the name of EGP Business Solutions, Inc., 139 Clubhouse Lane, Madison, AL 35757-6934, at AmSouth Bank, account no. 0055615600 (the "EGP account").  Additionally, EURICA PRESSLEY established bank accounts in her name in Dubai, United Arab Emirates ("UAE") at the National Bank of Ras Al-Khaimah, including account no. 0012-721151-100 (the "Pressley UAE account"), and in the Cayman Islands at the Cayman National Bank, including account no. SV 022-15898 (the "Pressley Cayman Islands I account"), and at NCB Cayman Ltd., account no. 70015293 (the "Pressley Cayman Islands II account").

6.     Between approximately October 2004 and approximately October 2005, while stationed in Kuwait, defendant EDDIE PRESSLEY arranged for a BPA to be awarded to defendant TERRY HALL's company, FCC, to deliver bottled water in Kuwait and Iraq.  Thereafter, EDDIE PRESSLEY arranged for calls to be issued under that BPA, as a result of which DoD paid FCC more than $9.3 million.  EDDIE PRESSLEY also arranged for the DoD to award a contract to FCC to construct a security fence at Camp Arifjan, for which the DoD paid FCC

over $750,000.

7.      From approximately September 2005 to approximately August 2006, co-conspirator James Momon was a Major in the U.S. Army deployed as a contracting specialist to Camp Arifjan in Kuwait.

8.      Between approximately September 2005 and approximately August 2006, while stationed in Kuwait, co-conspirator James Momon arranged for calls to be issued to defendant TERRY HALL's company, TGA, under the bottled water BPA referenced in paragraph 6 above, as a result of which DoD paid TGA over $6.4 million.

9.      To facilitate his business and related criminal activities, defendant TERRY HALL arranged for co-conspirators and others to set up and manage bank accounts on his behalf in Kuwait, the UAE, the Philippines, the Cayman Islands, the United States, and elsewhere.  These accounts were established, among other places, at the National Bank of Kuwait ("NBK"), the Bank of the Philippine Islands, the Cayman National Bank, the National Bank of Ras Al-Khaimah, the First National Bank of Texas ("FNBT"), the Bank of America ("BoA"), and AmSouth, which later merged with Regions Bank.

10.     The bank accounts referenced in the preceding paragraph included, but were not limited to, Bluebridge International General Trading, NBK account no. 0473512920361 (the "Bluebridge Kuwait account"); Trimedpro Project Management WLL, NBK account no. 0473907430301 (the "Trimedpro Kuwait

account"); BBI BR Freedom Consulting, NBK account no. 0473998480301 (the "Freedom Consulting Kuwait account"); BBI BR U.S. Eagles Services, NBK account no. 0473907510301 (the "US Eagles Kuwait account"); Freedom Consulting and Catering Co., BoA account no. 003254980156 (the "FCC BoA account"); Richard Bruce doing business as Total Government Allegiance, FNBT account no. 16693377; and Total Government Allegiance LLC, FNBT account no. 11129767 (the "TGA U.S. Account").  At HALL's direction, HALL's co-conspirators and others conducted financial transactions, including wire transfers, in these accounts and, at times, provided HALL with updates on the status of the accounts.

### The Conspiracy

11.    Between approximately January 2004 and approximately November 2007, within Kuwait, the UAE, the Cayman Islands, the Northern District of Alabama, and elsewhere, defendants

**TERRY HALL, EDDIE PRESSLEY and EURICA PRESSLEY,**

unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together with each other and others known and unknown to the Grand Jury to commit offenses against the United States, as follows:

(a)    to corruptly give, offer, and promise, directly and indirectly, a thing of value to a public official and another person with intent to influence an official act, in violation of Title 18, United States Code, Section 201(b)(1)(A); and

5

(b)      to corruptly demand, seek, receive, accept, and agree to receive and accept, directly and indirectly, a thing of value personally and for another person and entity, in return for being influenced in the performance of an official act, in violation of Title 18, United States Code, Section 201(b)(2)(A).

## Objects of the Conspiracy

12.      It was a part and object of the conspiracy for defendant TERRY HALL to enrich himself through corrupt means, by giving, offering and promising things of value to certain public officials and others with the intent to influence official acts, including the award of contracts and BPAs and the issuance of calls under BPAs.

13.      It was further a part and object of the conspiracy for defendant EDDIE PRESSLEY, defendant EURICA PRESSLEY, and certain U.S. Army officials to enrich themselves and others through corrupt means, by demanding, seeking, receiving, and agreeing to receive and accept things of value from defendant TERRY HALL and others in return for the officials being influenced in the performance of official acts, including, but not limited to, the award of contracts and BPAs and the issuance of calls under BPAs.

## Manner and Means of the Conspiracy

14.      Among the manner and means used by defendants TERRY HALL, EDDIE PRESSLEY, EURICA PRESSLEY and others to achieve the unlawful objects of the conspiracy were the following:

a.      Defendant TERRY HALL and others would and did promise certain U.S. Army officials, including defendant EDDIE PRESSLEY, co-conspirator James Momon, and others, sums of money and other valuable items in exchange for official acts, including the award of contracts and BPAs and the issuance of calls under BPAs.

b.      Certain U.S. Army officials, including defendant EDDIE PRESSLEY, co-conspirator James Momon, and others, would and did take official action to benefit defendant TERRY HALL, companies HALL operated and in which HALL had an interest, and others, including arranging for the award of contracts and BPAs and arranging for the issuance of calls for bottled water under BPAs.

c.      Defendant TERRY HALL, defendant EDDIE PRESSLEY, and others would and did arrange for companies and bank accounts to be established in Kuwait, the UAE, the Cayman Islands, the Philippines, and the United States in the names of third parties and entities for the purpose of transferring the bribe monies in a manner that would obscure the fact that EDDIE PRESSLEY, co-conspirator James Momon and other Army officials were the intended beneficiaries of the payments.

d.      Defendant TERRY HALL and others would and did pay bribes to certain U.S. Army officials and others, including defendant EDDIE PRESSLEY, defendant EURICA PRESSLEY, and co-conspirator James Momon, in the form of

7

cash and through wire transfers into bank accounts controlled by or established for the benefit of the U.S. Army officials and others.  EDDIE PRESSLEY and EURICA PRESSLEY received more than $2.8 million in money and other valuable items from HALL and others, and co-conspirator James Momon received at least $200,000 from HALL and others.

e.    Defendants TERRY HALL, EDDIE PRESSLEY, EURICA PRESSLEY, and others prepared and executed documents purporting to be consulting agreements, contracts, invoices and loan agreements for the purpose of creating the appearance that EURICA PRESSLEY and others had legitimately earned the payments from HALL, his companies and others.

f.    Defendant TERRY HALL would and did designate co-conspirators and others to set up and operate bank accounts on his behalf in Kuwait, the Philippines, the United States, and elsewhere in an effort to conceal his interest in those bank accounts.

**Overt Acts**

15.    In furtherance of the conspiracy and in order to accomplish its objects, defendants TERRY HALL, EDDIE PRESSLEY, and EURICA PRESSLEY, together with their co-conspirators, committed overt acts in the Northern District of Alabama and elsewhere, including, but not limited to, the following:

a.    On or about March 9, 2005, in Kuwait and elsewhere, defendant EDDIE PRESSLEY sent an email message to defendant EURICA

8

PRESSLEY, stating in substance that she would be receiving some paperwork with her maiden name on it, that EURICA PRESSLEY should sign the paperwork and put it in the mail, and that he "can't have anyone paying me as I am in the military so I had them put everything in your maiden name."

b.      On or about April 7, 2005, in the Northern District of Alabama and elsewhere, defendant EURICA PRESSLEY caused the EGP account to be opened.

c.      On or about May 4, 2005, in Kuwait, defendant EDDIE PRESSLEY arranged a call for bottled water from FCC.  As a result of this call, DoD paid FCC approximately $3,535,075.25.

d.      In or about late May or early June 2005, in the UAE, defendants TERRY HALL and EURICA PRESSLEY caused two bank accounts to be opened, including the Pressley UAE account.

e.      On or about June 6, 2005, defendant TERRY HALL caused approximately 733,900 UAE dirham (approximately $200,000) to be wired from an account at the Commercial Bank of Kuwait in the name of United International Holding, account no. unknown (the "UIH Kuwait account"), to the Pressley UAE account.

f.      On or about June 27, 2005, defendant TERRY HALL caused approximately 733,900 UAE dirham (approximately $200,000) to be wired from the UIH Kuwait account to the Pressley UAE account.

g.      On or about July 7, 2005, defendant TERRY HALL caused approximately 733,900 UAE dirham (approximately $200,000) to be wired from the UIH Kuwait account to the Pressley UAE account.

h.      On or about July 13, 2005, defendant TERRY HALL caused approximately 733,900 UAE dirham (approximately $200,000) to be wired from the UIH Kuwait account to the Pressley UAE account.

i.      In or about July 2005, in the Cayman Islands, defendant EURICA PRESSLEY opened the Pressley Cayman Islands I account.

j.      On or about July 31, 2005, in Kuwait, defendant EDDIE PRESSLEY arranged a call for bottled water from FCC, causing DoD to pay FCC approximately $3,682,596.61.

k.      On or about September 1, 2005, in Kuwait, defendant EDDIE PRESSLEY arranged a call for bottled water from FCC, causing DoD to pay FCC approximately $1,865,698.00.

l.      On or about September 10, 2005, in Kuwait, defendant EDDIE PRESSLEY arranged a call for bottled water from FCC, causing DoD to pay FCC approximately $182,988.99.

m.      On or about September 19, 2005, in the Northern District of Alabama and elsewhere, defendant TERRY HALL caused approximately $75,000 to be wired from the FCC BoA account into the EGP account.

n.      On or about September 23, 2005, in Kuwait and elsewhere,

defendant EDDIE PRESSLEY arranged a call for bottled water from FCC, causing DoD to pay FCC approximately $70,248.00.

o.     On or about September 26, 2005, in the Northern District of Alabama and elsewhere, defendant TERRY HALL caused approximately $112,000 to be wired from the FCC BoA account into the EGP account.

p.     On or about September 28, 2005, in the Northern District of Alabama and elsewhere, defendant TERRY HALL caused approximately $100,000 to be transferred from the FCC BoA account into the EGP account.

q.     On or about November 9, 2005, defendant TERRY HALL caused approximately $59,975 to be transferred from the Bluebridge Kuwait account to the Pressley Cayman Islands II account.

r.     On or about November 9, 2005, defendant TERRY HALL caused approximately $99,969 to be transferred from the US Eagles Kuwait account to the Pressley Cayman Islands I account.

s.     On or about January 3, 2006, in Kuwait, co-conspirator James Momon arranged a call for bottled water from FCC, causing DoD to pay TGA approximately $362,492.75.

t.     On or about January 4, 2006, in the Northern District of Alabama and elsewhere, defendant TERRY HALL caused approximately $94,970 to be wired from the Trimedpro Kuwait account into the EGP account.

u.     On or about January 27, 2006, in Kuwait, co-conspirator James

Momon arranged a call for bottled water from TGA, causing DoD to pay TGA approximately $642,053.75.

v.     On or about February 6, 2006, in Kuwait, co-conspirator James Momon arranged a call for bottled water from TGA, causing DoD to pay TGA approximately $1,293,626.28.

w.     On or about February 7, 2006, in the Philippines and elsewhere, defendant TERRY HALL caused two bank accounts to be established in the name of a co-conspirator ("CC-1") at the Bank of the Philippines Islands, in order to make bribe payments to co-conspirator James Momon and another U.S. Army official.

x.     On or about March 21, 2006, in the Northern District of Alabama and elsewhere, defendant TERRY HALL caused approximately $41,970 to be wired from the US Eagles Kuwait account into the EGP account.

y.     On or about March 21, 2006, in Kuwait, co-conspirator James Momon arranged a call for bottled water from TGA, causing DoD to pay TGA approximately $2,492,054.50.

z.     On or about March 27, 2006, in Atlanta, Georgia, defendant TERRY HALL delivered a bribe payment of approximately $100,000 in cash to co-conspirator James Momon.

aa.     On March 29, 2006, in Kuwait and elsewhere, defendant TERRY HALL caused approximately $109,970 to be wired from the U.S. Eagles

12

Kuwait account to the bank account HALL had established for co-conspirator
James Momon's benefit in the Philippines.

   bb.    On or about April 19, 2006, in Kuwait and elsewhere,
defendant TERRY HALL caused approximately $699,954 to be wired from the
Trimedpro Kuwait account to the Pressley Cayman Islands I account.

   cc.    On or about April 26, 2006, in Kuwait and elsewhere,
defendant TERRY HALL caused approximately $99,964 to be wired from the
Trimedpro Kuwait account to the Pressley Cayman Islands I account.

   dd.    On or about April 27, 2006, in Kuwait and elsewhere,
defendant TERRY HALL caused approximately $249,954 to be wired from the
Bluebridge Kuwait account to the Pressley Cayman Islands I account.

   ee.    On or about May 5, 2006, in Kuwait, co-conspirator James
Momon arranged a call ordering bottled water from TGA, causing DoD to pay
TGA approximately $990,225.86.

   ff.    On or about May 25, 2006, in the Northern District of Alabama
and elsewhere, defendant TERRY HALL caused approximately $255,970 to be
wired from the Bluebridge Kuwait account into the EGP account.

   gg.    On or about May 30, 2006, in Kuwait, co-conspirator James
Momon arranged a call for bottled water from TGA, causing DoD to pay TGA
approximately $646,633.75.

   hh.    In or about August 2006, in Kuwait, defendant TERRY HALL

delivered a bribe payment of approximately $100,000 in cash to co-conspirator James Momon.

All in violation of Title 18, United States Code, Sections 371 and 2.

## COUNT TWO
## 18 U.S.C. § 201(b)(1)(A)
### (Bribery)

16.     The allegations contained in paragraphs 1-6, 9-10, 15a-15r, 15t, 15x, 15bb-15dd, and 15ff of this Superseding Indictment are repeated and realleged as though fully set forth herein.

17.     Between approximately October 2004 and approximately August 2006, in Kuwait, the UAE, the Cayman Islands, the Northern District of Alabama, and elsewhere, defendant

## TERRY HALL,

directly and indirectly, corruptly did give, offer, and promise a thing of value to a public official and another person to influence an official act; that is, HALL offered and paid money and other things of value to defendant EDDIE PRESSLEY, a U.S. Army officer assigned to Camp Arifjan, Kuwait, and to defendant EURICA PRESSLEY, in order to influence EDDIE PRESSLEY's official acts, including, but not limited to, the award of contracts and BPAs and calls on BPAs for bottled water.

All in violation of Title 18, United States Code, Sections 201(b)(1)(A) and 2.

## COUNT THREE

14

**18 U.S.C. § 201(b)(2)(A)**
**(Bribery)**

18.     The allegations contained in paragraphs 1-6, 9-10, 15a-15r, 15t, 15x, 15bb-15dd, and 15ff of this Superseding Indictment are repeated and realleged as though fully set forth herein.

19.     Between approximately October 2004 and approximately August 2006, in Kuwait, the UAE, the Cayman Islands, the Northern District of Alabama, and elsewhere, defendant

**EDDIE PRESSLEY,**

being a public official, aided and abetted by defendant **EURICA PRESSLEY,** directly and indirectly, corruptly did demand, seek, receive, accept, and agree to receive and accept something of value in return for EDDIE PRESSLEY being influenced in the performance of official acts, including, but not limited to, the award of contracts and BPAs and calls under BPAs for bottled water.

All in violation of Title 18, United States Code, Sections 201(b)(2)(A) and 2.

**COUNTS FOUR THROUGH ELEVEN**
**18 U.S.C. §§ 1343 & 1346**
**(Honest Services Wire Fraud)**

20.     The allegations contained in paragraphs 1-6, 9-10, 15a-15l, 15n, 15q-15r, and 15bb-15dd of this Superseding Indictment are repeated and realleged as though fully set forth herein.

21.     Between approximately October 2004 and approximately August

2006, in the Northern District of Alabama and elsewhere, the defendants

**TERRY HALL, EDDIE PRESSLEY and EURICA PRESSLEY,**

together with others, knowingly and willfully devised and intended to devise a

scheme and artifice to defraud and deprive the United States Government and DoD

of the right to the honest and faithful services of EDDIE PRESSLEY and co-

conspirator James Momon, as Army Majors and Army contracting specialists,

performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and

concealment.

<u>Execution of the Scheme</u>

22.    On or about the date of each count listed below, in the Northern

District of Alabama and elsewhere, defendants TERRY HALL, EDDIE

PRESSLEY, EURICA PRESSLEY, and others, for the purpose of executing the

above-described scheme and artifice to defraud, did knowingly transmit and cause

to be transmitted by means of wire communications in interstate and foreign

commerce, the following wire transfers into the EGP account located in the

Northern District of Alabama:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| **Four** | 9/19/05 | $75,000 wire from the FCC BoA account into the EGP account |
| **Five** | 9/26/05 | $112,000 wire from the FCC BoA account into the EGP account |
| **Six** | 9/28/05 | $100,000 wire from the FCC BoA account into the EGP account |
| **Seven** | 12/15/05 | $44,970 wire from the Bluebridge Kuwait account into the EGP account |

| Eight | 1/4/06 | $94,970 wire from the Trimedpro Kuwait account into the EGP account |
| Nine | 3/21/06 | $41,970 wire from the US Eagles Kuwait account into the EGP account |
| Ten | 3/22/06 | $80,000 wire from the Pressley Cayman Islands account into the EGP account |
| Eleven | 5/25/06 | $255,970 wire from the Bluebridge Kuwait account into the EGP account |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

### COUNT TWELVE
### 18 U.S.C. § 1956(h)
### (Conspiracy to Launder Monetary Instruments)

23.    The allegations contained in paragraphs 1-6 and 9-10 of this

Superseding Indictment are repeated and realleged as though fully set forth herein.

24.    From approximately March 2005 to approximately December 2007, in

the Northern District of Alabama and elsewhere, the defendants

**TERRY HALL, EDDIE PRESSLEY, and EURICA PRESSLEY,**

did knowingly combine, conspire, confederate and agree together and with each

other and with other persons known and unknown to the Grand Jury to commit

offenses against the United States in violation of Title 18, United States Code,

Section 1956, to wit:

a.    to knowingly conduct and attempt to conduct financial

transactions affecting interstate commerce and foreign commerce, which

transactions involved the proceeds of specified unlawful activity, that is, bribery of

a public official in violation of 18 U.S.C. § 201 and wire fraud in violation of 18

U.S.C. §§ 1343 and 1346, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.      to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds to a place in the United States from a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, bribery of a public official in violation of 18 U.S.C. § 201 and wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

c.      to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds to a place in the United States from a place outside the United States knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, bribery of a public official in violation of 18 U.S.C. § 201 and wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, in violation of Title 18, United

States Code, Section 1956(a)(2)(B)(i).

## Manner and Means of the Conspiracy

25.     Among the manner and means used by defendants TERRY HALL,

EDDIE PRESSLEY, EURICA PRESSLEY and others to achieve the unlawful

objects of the conspiracy were the following:

a.     In 2005 and 2006, defendant TERRY HALL arranged for bank

accounts to be established in the names of third parties, including defendant

EURICA PRESSLEY, in the UAE, the Cayman Islands, the Philippines, and the

United States, for the purpose of transferring the bribe payments to public officials

in a manner that would obscure that the officials were the intended beneficiaries of

the payments.

b.     In 2005, defendant EURICA PRESSLEY purported to establish

and operate a legitimate consulting business named EGP Business Solutions, Inc.,

and caused a bank account in the name of that entity to be opened at AmSouth

Bank.  In fact, EGP Business Solutions was a shell company whose address was

the Harvest, Alabama residence of EDDIE PRESSLEY and EURICA PRESSLEY,

and its AmSouth Bank account operated mainly as a vehicle for receiving bribe

payments from defendant TERRY HALL and other DoD contractors with whom

defendant EDDIE PRESSLEY had struck corrupt agreements.

c.     In 2005 and 2006, defendant TERRY HALL, defendant

EURICA PRESSLEY, and others prepared and executed documents purporting to

be consulting agreements, contracts, invoices and loan agreements for the purpose

of creating the appearance that EURICA PRESSLEY and others were entitled to

receive the bribe payments intended for EDDIE PRESSLEY.

        d.      In 2005 and 2006, defendant TERRY HALL wired more than

$495,000 from bank accounts he controlled in Kuwait into the EGP account.  In

2006 and 2007, defendant EURICA PRESSLEY wired more than $250,000 from

the Pressley Cayman Islands I account into the EGP account.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THIRTEEN
## 18 U.S.C. § 1957
## (Monetary Transactions in Criminal Proceeds)

26.     The allegations contained in paragraphs 1-6 and 9-10 of this

Superseding Indictment are repeated and realleged as though fully set forth herein.

27.     In or about August 2006, in the Northern District of Alabama and

elsewhere, the defendants

**TERRY HALL, EDDIE PRESSLEY, and EURICA PRESSLEY,**

did knowingly engage and attempt to engage in monetary transactions by, through

and to a financial institution, affecting interstate and foreign commerce, in

criminally derived property of a value greater than $10,000, that is the transfer of

funds, such property having been derived from specified unlawful activity, that is,

bribery of a public official in violation of 18 U.S.C. § 201 and wire fraud in

violation of 18 U.S.C. §§ 1343 and 1346, to wit, TERRY HALL, EDDIE

PRESSLEY, and EURICA PRESSLEY transferred a total of approximately

$2,914,780 from bank accounts in Kuwait and the United States which contained

funds derived from the violations of §§ 201, 1343 and 1346 of Title 18, United

States Code described above,  including but not limited to the Bluebridge Kuwait

account, the Trimedpro Kuwait account, the Freedom Consulting Kuwait account,

the US Eagles Kuwait account, the TGA U.S. account, and the EGP account, to

Putman Properties II, LLC ("Putman Properties") to purchase approximately 24

acres of riverfront property near Muscle Shoals, Alabama (the "Alabama Shoals

property") for $5.5 million, borrowing the balance of the purchase price from the

seller.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS FOURTEEN THROUGH TWENTY-THREE
## 18 U.S.C. § 1957
### (Monetary Transactions in Criminal Proceeds)

28.     The allegations contained in paragraphs 1-6 and 9-10 of this

Superseding Indictment are repeated and realleged as though fully set forth herein.

29.     On or about the dates set forth below, in the Northern District of

Alabama and elsewhere, the defendants

### EDDIE PRESSLEY and EURICA PRESSLEY,

did knowingly engage and attempt to engage in the following monetary

transactions by, through, and to a financial institution, affecting interstate and

foreign commerce, in criminally derived property of a value greater than $10,000,

that is the transfer of funds, such property having been derived from specified

unlawful activity, that is, bribery of a public official in violation of 18 U.S.C. §

201, and wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, as follows:

| Count | Date | Monetary Transaction |
|-------|------|----------------------|
| **Fourteen** | 9/27/05 | transfer of approximately $31,236.27 from the EGP account to Capitol One Auto Finance in partial payment of loan defendant EDDIE PRESSLEY obtained to purchase 2003 Lincoln Navigator automobile |
| **Fifteen** | 3/24/06 | transfer of  approximately $146,000 from the EGP account to Jerry Stafford Realty to purchase 55 acres of real estate in Athens, Alabama |
| **Sixteen** | 5/6/06 | transfer of approximately $78,650 from the EGP account to BMW of Nashville to purchase 2006 BMW Li Sedan automobile |
| **Seventeen** | 9/1/06 | transfer of approximately $52,000 from Redstone Federal Credit Union account no. 717126 in the name of EURICA PRESSLEY to Décor and You for home decorating services |
| **Eighteen** | 10/2/06 | transfer of approximately $100,000 from the Pressley Cayman Islands I account to Putman Properties to make loan payment on Alabama Shoals property |
| **Nineteen** | 3/7/07 | transfer of $80,000 from USAA Federal Savings Bank account no. 31654517 in the name of EDDIE PRESSLEY and Kristen Pressley to BMW of Nashville to purchase 2007 BMW 750 Li Sedan automobile |
| **Twenty** | 3/19/07 | transfer of approximately $30,173.61 from Regions Bank account no. 0400930237 in the name of U.S. Eagles Logistics LLC (the "U.S. Eagles Logistics account") to Putman Properties to make loan payment on Alabama Shoals property |
| **Twenty-One** | 4/26/07 | transfer of approximately $30,173.61 from the U.S. Eagles Logistics account to Putman Properties to make loan payment on Alabama Shoals property |
| **Twenty-Two** | 7/9/07 | transfer of approximately $30,173.61 from the U.S. Eagles Logistics account to Putman Properties to make loan payment on Alabama Shoals property |
| **Twenty-Three** | 8/7/07 | transfer of approximately $100,000 from the U.S. Eagles Logistics account to Putman Properties to make loan |

| | | payment on Alabama Shoals property |
|---|---|---|

All in violation of Title 18, United States Code, Sections 1957 and 2.

## CRIMINAL FORFEITURE ALLEGATION

30.     Paragraphs 1 through 29 are re-alleged as though set forth fully herein

and incorporated by reference for the purpose of alleging forfeiture to the United

States of America pursuant to the provisions of Title 18, United States Code,

Section 982(a)(1) and Title 28, United States Code, Section 2461(c) (incorporating

Title 18, United States Code, Section 981(a)(1)(C)).

31.     As a result of the offenses alleged in Counts One through Twenty-

Three of this Indictment, defendants TERRY HALL, EDDIE PRESSLEY, and

EURICA PRESSLEY shall forfeit to the United States:  (1) any and all property,

real or personal, constituting, or derived from, proceeds obtained directly or

indirectly, as the result of the conspiracy to commit bribery, in violation of Title

18, United States Code, Section 371, or the commission of bribery, in violation of

Title 18, United States Code, Section 201; (2) any and all property, real or

personal, constituting, or derived from, proceeds obtained directly or indirectly, as

a result of the wire fraud scheme, in violation of Title 18, United States Code,

Sections 1343 and 1346; (3) any and all property, real or personal, involved in, or

traceable to property involved in the conspiracy to commit money laundering, in

violation of Title 18, United States Code, Section 1956(h); and (4) any and all

property, real or personal, involved in, or traceable to property involved in the

prohibited monetary transactions, in violation of Title 18, United States Code,

Section 1957.  Such property includes, but is not limited to:

    A.    <u>Money Judgment</u>, for which each defendant is jointly and severally

liable, of:

> $21 million, which represents a sum of money equal to an amount of property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the conspiracy to commit bribery, in violation of Title 18, United States Code, Section 371, and bribery, in violation of Title 18, United States Code, Section 201; and a sum of money equal to an amount of property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the wire fraud scheme, in violation of Title 18, United States Code, Sections 1343 and 1346; and a sum of money equal to an amount of property involved in, or traceable to property involved in, the conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

    B.    <u>Real Property</u>

> 1.    995 Lakewood View Road, Florence Alabama, further described as: a tract of land lying in the Southwest 1/4 of Sections 13, in the Northeast 1/4 of Section 23 and in the Northwest 1/4 of Section 24, all in Township 3 South, Range 9 West, Lauderdale County, Alabama and  a tract or parcel lying in the Northeast 1/4 of the Northwest 1/4 of Section 24, Township 3 South, Range 9 West, Lauderdale County, Alabama and a tract or parcel of land lying in the southeast 1/4 of the Southwest 1/4 of Section 13, Township 3 South, Range 9 West, Lauderdale County, Alabama, including appurtenances and attachments thereon.

> 2.    Missouri timeshare, further described as:  a 1.923% undivided interest as tenant-in-common in and to Unit No: 007 (the "Unit"), Timber Creek Resort, Phase 1, a vacation resort in Jefferson County, Missouri, as per the recorded plat thereof and according to the Amended and Restated Declaration of restrictions, Covenants and Conditions recorded in Book 1033,

Page 513 and Supplemental Declaration recorded in Book N/A, Page N/A real Property Records of Jefferson County, Missouri (the "Declaration"), together with the exclusive right to occupy the Unit during Use Period No. 19 beginning May 7, 2005, as said Use Period is defined in the Declaration, upon and subject to all of the terms, restrictions, covenants, conditions and provisions in the Declaration, referred to as the "Vacation Ownership Interest."

3.    4222 Countrypark Drive, Spring, Texas 77388, described as being real property account #1234300030006 for Lot 6 Block 3, Country Lakes Estates, Section 1, by the Harris County Appraisal District, Harris County, Texas, including any appurtenances and attachments thereon.

4.    Approximately 55 acres of land located in Limestone County, Alabama, further described as:  Tract 7 of the Marvin Littrell Acres Subdivision containing 55 acres as shown by the map or plat of said subdivision on file in the Probate Office of Limestone County, Alabama, in Plat Book G at Page 139, including any appurtenances and attachments thereon, except for the parcel described in the Warranty Deed recorded on April 10, 2006, in Book 2006, Page 21743 on file in the Probate Office of Limestone County, Alabama.

C.    Personal Property

(1) one 2007 BMW 750 Li Sedan automobile, VIN WBAHN83557DT71570, purchased by Eddie Pressley on or about March 5, 2007; (2) one 2003 Lincoln Navigator automobile, VIN 5LMFU28R83LJ21349, purchased by Eddie Pressley on or about November 23, 2003; and (3) one 2005 Electra Glide Ultra Classic Harley Davidson Motorcycle, VIN 1HD1FCW185Y633020, purchased by Terry Hall on or about December 29, 2005.

32.    As a result of the offense alleged in Count Thirteen of this

Superseding Indictment, defendants TERRY HALL, EDDIE PRESSLEY, and

EURICA PRESSLEY shall forfeit to the United States $5.5 million, which

represents a sum of money equal to an amount of property involved in, or traceable to property involved in, the prohibited monetary transaction, in violation of Title 18, United States Code, Section 1957.

33.    As a result of the offenses alleged in Counts Fourteen through Twenty-Three of this Superseding Indictment, defendants EDDIE PRESSLEY and EURICA PRESSLEY shall forfeit to the United States $678,407.10, which represents a sum of money equal to an amount of property involved in, or traceable to property involved in, the prohibited monetary transactions, in violation of Title 18, United States Code, Section 1957.

34.    By virtue of the commission of the felony offenses charged in this Superseding Indictment, any and all interest that defendants TERRY HALL, EDDIE PRESSLEY, and EURICA PRESSLEY have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982 and Title 28, United States Code, Section 2461(c).  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third person;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property that cannot be

subdivided without difficulty

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

All in violation of Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c) (incorporating Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL

*/s/ Electronic Signature*

_____

FOREPERSON OF THE GRAND JURY

WILLIAM M. WELCH II
Chief, Public Integrity Section
Criminal Division

*/s/ Electronic Signature*

_____

Peter C. Sprung
Deborah Sue Mayer
Edward J. Loya, Jr.
Trial Attorneys