## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:09-CR-154-VEH-PWG** |
| | ) | |
| **EDDIE AND EURICA PRESSLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## Memorandum of Opinion and Order

### I.   Introduction.

On March 2, 2011, Defendant Eddie Pressley was found guilty by a jury verdict of the following: one count of conspiracy in violation of 18 U.S.C. § 371 (Count One); one count of bribery in violation of 18 U.S.C. § 201(b)(2) (Count Two); seven counts of depriving the public of its right to the honest services of a public official or employee through the use of the wires in violation of 18 U.S.C. §§ 1343 and 1346 (Counts Three through Ten); one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Eleven); and ten counts of engaging in monetary transactions with criminal proceeds in violation of 18 U.S.C. § 1957 (Counts Twelve through Twenty-Two).   On that same date, Defendant Eurica Pressley was found by a jury verdict of the following: one count of conspiracy in

violation of 18 U.S.C. § 371 (Count One); one count of aiding and abetting bribery in violation of 18 U.S.C. § 2 (Count Two); seven counts of depriving the public of its right to the honest services of a public official or employee through the use of the wires in violation of 18 U.S.C. §§ 1343 and 1346 (Counts Three through Ten); one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Eleven); and ten counts of engaging in monetary transactions with criminal proceeds in violation of 18 U.S.C. § 1957 (Counts Twelve through Twenty-Two).

Defendants have filed various motions seeking judgment of acquittal (in whole or part), a new trial, to dismiss the indictment, to vacate the judgment for lack of subject matter jurisdiction, and for discovery.  (Docs. 111, 125, 126, 129, 130, 131, and 132[1]).  The Government has responded.  (Docs. 134, 135[2], and 141).

II.    Applicable Standards.

A.    Motion for Judgment of Acquittal

"A defendant may move for a judgment of acquittal, or renew such a motion within 7 days after a guilty verdict or after the court discharges the jury, whichever

---

[1]  The court is unable to find any issue raised by Documents 131 or 132 that is not also raised by Document 129.  Therefore, the court does not address Documents 131 or 132 separately in its discussion herein.

[2]  Documents 134 and 135 are duplicates but the Court lists them both for completeness.

2

is later." FED. R. CRIM. P. 29(c). Under Rule 29(c), the Court must "view the facts and draw all inferences in the light most favorable to the Government." *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002). In doing so, the question for the Court becomes whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among the constructions of the evidence. *United States v. Battle*, 892 F.2d 992, 998 (11th Cir. 1990).

B.     Motion for New Trial.

With regard to a motion for new trial, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Under Rule 33, the Court "may weigh the evidence and consider the credibility of witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). However, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a

miscarriage of justice to let the verdict stand." *Id*. at 1312-13. Motions for new trials are to be granted "sparingly and with caution, doing so only in those really 'exceptional cases.'" *Id*. at 1313.

      C.    Motion to Dismiss the Indictment.

Motions to dismiss the indictment are governed by FED. R. CRIM. P. 12(b)(3). While Rule 12(b)(3) lists motions that must be made *before* trial, Rule 12(b)(3)(B) specifically *excepts* "a claim that the indictment ... fails to invoke the court's jurisdiction or to state an offense."[3]  FED. R. CRIM. P. 12(b)(3)(B).

III.    Discussion

      A.    Jurisdiction.

Eddie Pressley argues that this court lacks personal and subject matter jurisdiction.  (Doc. 129, ¶¶ 1, 2, 3, and 4).

      1.    Challenge to Personal and Subject Matter Jurisdiction.

In the first paragraph of his Motion to Dismiss the Indictment and/or for a New

---

[3] (3)  Motions That Must Be Made Before Trial.  The following must be raised before trial.

              \*\*\*

    (B) a motion alleging a defect in the indictment or information — but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense;

              \*\*\*

FED. R. CRIM. P. 12(b)(3)(B).

Trial (doc. 129), Eddie Pressley summarily states that "[t]his Court does not have personal or subject matter jurisdiction of the matters stated in the original Indictment or any amendments thereto."

A nation may punish the wrongful acts of its citizens no matter where the conduct occurs. *United States v. Reeh*, 780 F.2d 1541 (11th Cir. 1986). Further, many of the acts of the conspiracy, including meetings between Eddie Pressley and Terry Hall, opening bank accounts, setting up a "dummy" corporation, sending and receiving emails, and "laundering" the illegal proceeds, occurred in the Northern District of Alabama. Therefore, this court properly had jurisdiction over both the individual Defendants and the crimes charged. Finally, based on these facts, venue was proper in the Northern District of Alabama.

> "Both Rule 18 of the Federal Rules of Criminal Procedure and the Constitution require that a person be tried for an offense where that offense is committed," 109 F.3d, at 472; also, the site of a charged offense " 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it,' " *ibid*. (quoting *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946)). "Continuing offenses," the Court of Appeals recognized, those "begun in one district and completed in another," 18 U.S.C. § 3237(a), may be tried " 'in any district in which such [an] offense was begun, continued, or completed.' " 109 F.3d, at 472 (quoting § 3237(a))."

*U.S. v. Cabrales*, 524 U.S. 1, 5, 118 S.Ct. 1772, 1775 (1998)(quoting with approval the standard set out by the Eighth Circuit at 115 F.3d 621 (8th Cir. 1997) in the case

before the Supreme Court).  Therefore, the court finds that it has jurisdiction and that venue was proper.

        2.      Uniform Code of Military Justice.

Eddie Pressley also argues that "[e]xclusive jurisdiction of this defendant is pursuant to the Uniform Code of Military Justice, 18 U.S.C. § 801 et seq." (Doc. 129, ¶ 2).  However, the settled law of this Circuit is that "offenses against laws of the United States are triable in United States District Courts even when they involve military personnel.  The fact that an offender may be answerable to a court martial for his civilian offenses does not absolve him before civilian courts." *Schmitt v. U.S.*, 413 F.2d 219, 224 -225 (5th Cir. 1969)(internal citations omitted). *See also*, *United States v. Hodge*, 487 F.2d 945, 946 (5th Cir. 1973) (same).[4]  Therefore, the court rejects this argument.

        3.      Source of Funds.

Eddie Pressley next challenges the jurisdiction of this court on the basis that "the funds that paid for the goods and services that were the subjects of the alleged bribes were not the funds of the United States of America, but belonged to the Defense Development Fund for Iraq." (Doc. 129, ¶ 3).  The Government apparently

---

[4]  Pursuant to *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit.

does not dispute this factual averment.  However, because, for the reasons explained at Section III. C, *infra*, the Government did not have to prove that there was any loss to the United States, that fact is not an element of the crimes charged, and therefore the fact of the source of the funds does not have any impact on this court's jurisdiction.

### 4.    Foreign Sovereign Immunity Act

Eddie Pressley further asserts that "[t]his [c]ourt lacks personal and subject matter jurisdiction as the claims in the indictment, as amended, are subject to the Foreign Sovereign Immunit[ies] Act ["FSIA"], 28 U.S.C. § 1602 et seq." (Doc. 129, ¶ 4).  However, the FSIA has no application to the claims in the indictment or to Eddie Pressley.

> The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" except as provided in the Act. § 1604. Thus, if a defendant is a "foreign state" within the meaning of the Act, then the defendant is immune from jurisdiction unless one of the exceptions in *2286 the Act applies. See §§ 1605-1607 (enumerating exceptions). The Act, if it applies, is the "sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989).

*Samantar v. Yousuf*, 130 S.Ct. 2278, 2285 -2286 (2010).

Eddie Pressley is clearly not a "foreign state."  Nor can he claim that his is an "agency or instrumentality of a foreign state" as the FSIA expressly excludes from the

definition of such agency of instrumentality any citizen of a State of the United States.  *See* 28 U.S.C. § 1603(a) and (b)(3).  Therefore, the court rejects this argument.

      B.     Jury Selection and Deliberations.

          1.     The Jury Selection Process

Eddie Pressley seeks a new trial based upon two alleged deficiencies in the process of jury selection: (1) the jury venire allegedly contained an inadequate number of African Americans (Doc. 129 at ¶¶ 5, 6); and (2) the court "arbitrarily released some jurors from the venire for hardship excuses and retained others who had the same objections[,]" thereby "fail[ing] to follow the excuse/deferral criteria as published by the Northern District of Alabama (*Id*. at ¶ 7).

          a.     The Jury Venire

At trial, no motion challenging the composition of the jury venire was ever made by anyone.  In fact, counsel for both defendants specifically disavowed such a motion.  (Doc. 139 at p.13, l.4 - p.14, l.13).  Therefore, Eddie Pressley's motion for a new trial based on the composition of the jury venire is due to be denied.  *Francis v. Southern Pac. Co.*, 333 U.S. 445, 68 S.Ct. 611 (1948) (objection that jury panel from which jury was selected was improperly drawn was made too late where made for first time in motion for new trial.).

8

b.     The Jurors Excused on Hardship Grounds

Counsel for Eddie Pressley consented to the jurors excused for hardship by the court. (Doc. 139, p.14, l.16 - p.17, l.11). Thus, his request for a new trial based on those excuses by the court has been waived. Further, he has not even alleged that the court disproportionately excused African American jurors and not Caucasian jurors, or that the jurors who were selected were not impartial. His motion for new trial based on the court's decisions regarding hardship excuses therefore is due to be denied. *See, U.S. v. Paradies*, 98 F.3d 1266, 1281 (11th Cir. 1996), *cert. denied*, 542 U.S. 1014 (1997) (court's excuse of jurors on hardship basis did not result in impermissible discrimination or arbitrariness warranting new trial).

2.     Length of Jury Deliberations

Eddie Pressley also claims that "[t]he jury failed to adequately consider the voluminous evidence in this case as the jury deliberated less than one and one-half hours[,] excluding the time for lunch." (Doc. 129, ¶ 8). This court has been unable to find any case stating that a jury must deliberated for a particular length of time or else the verdict must be set aside. Indeed, the law of this Circuit, and of every other circuit examined by this court, is that brief jury deliberation alone is not a sufficient basis for a new trial. *Marx v. Hartford Accident & Indem. Co.*, 321 F.2d 70, 71 (5th Cir.1963) ("We cannot hold an hour-glass over a jury. If the evidence is sufficient to

9

support the verdict, the length of time the jury deliberates is immaterial."); *see Kearns v. Keystone Shipping Co.*, 863 F.2d 177, 182 (1st Cir.1988) ("Brief jury deliberation is not, in itself, sufficient basis to support a new trial motion.").

"At best, [the brevity of jury deliberation] is a factor to be considered when deciding a motion for new trial, and even then cannot be the only basis for granting a new trial." *United States v. Cunningham*, 108 F.3d 120, 124 (7th Cir.1997). In this case, two co-conspirators testified concerning Eddie Pressley's knowledge of and participation in every act of which he was convicted. If the jury believed the two co-conspirators, the case was not complicated to decide. *See*, *U.S. v. Aguilera,* 625 F.3d 482, 487 (8th Cir. 2010) ("As discussed, the evidence here did not compel the grant of a new trial. To the extent that the duration of deliberations is relevant at all, this was not a complex case. If the jury credited Mata-Gutierrez's testimony, which directly implicated Aguilera in the charged conduct, then lengthy deliberations were unnecessary.") Further, due to the electronics in the courtroom, the jury was able to see the documents as soon as they were admitted. Finally, the Government used a summary witness and summary charts to simplify the Defendants' financial transactions for the jury. The court agrees that "[t]here is simply no basis here to conclude that the jury failed to discharge its obligations." (Doc. 141, p. 39).

C.     Sufficiency of the Indictment

Eddie Pressley argues that because he "was a contract specialist and did not have a warrant, ... [he] did not have any legal capacity to bind the United States and therefore could not be bribed under the terms of 18 U.S.C. § 201." (Doc. 129, ¶ 10). This is an attack on the sufficiency of the indictment, and therefore is not barred because it was not asserted before trial, as the Government asserts.[5] (Doc. 141, p. 41). Nonetheless, this argument fails on the merits.

The bribery statute, 18 U.S.C. § 201(b)(2)(A), makes it a crime for a public official to demand or receive anything of value in exchange for being influenced in the performance of any official act.  The statute defines "public official" to include "an officer or employee or person acting on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency or branch of Government[.]"  18 U.S.C. § 201(a)(1).  The definition contains no requirement that the public official have ultimate decision making authority with respect to his or her official functions.  *See*, *U.S. v. Kenney*, 185 F.3d 1217, 1221 -1222 (11th Cir. 1999) ("[I]n order to be considered a public official a defendant need

---

[5]     *See* Fed. R. Crim. P. 12(b)(3)(B) ("<u>at any time</u> while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.")(emphasis supplied).

not be the final decision maker as to a federal program or policy. Rather, it appears to be sufficient that the defendant is in a position of providing information and making recommendations to decision makers as long as the defendant's input is given sufficient weight to influence the outcome of the decisions at issue.").

Moreover, to the extent that Eddie Pressley is arguing that the statute's "official act" provision required proof that he had ultimate decision-making authority, he is similarly mistaken.  The statute defines an "official act" as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."  18 U.S.C. § 201(a)(3).  The Eleventh Circuit, relying on Supreme Court precedent, has interpreted this provision broadly.

> In *United States v. Birdsall*, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1914), the Court interpreted the "official act" requirement of the precursor to § 201. *Id*. at 231, 34 S.Ct. 512.
>
> \*\*\*
>
> The Court held in *Birdsall* that "[e]very action that is within the range of official duty comes within the purview of these sections." *Id*. at 230, 34 S.Ct. 512.
>
> \*\*\*
>
> *Birdsall* was followed by the Second Circuit as recently as 1988. In *United States v. Biaggi*, 853 F.2d 89 (2d Cir.1988), the court held that a United States Congressman engaged in official acts within the meaning of 18 U.S.C. § 201(b)(1)(B) when he wrote letters on his congressional stationary on behalf of a party who had paid for his

> vacations, and urged federal and city officials to take action favorable
> to that party. *Id*. at 97-98. The *Biaggi* court held that even though the
> Congressman's actions were non-legislative, his conduct constituted an
> official act under the broad definition of *Birdsall*. *Id*.

*U.S. v. Moore*, 525 F.3d 1033, 1041 (11th Cir. 2008).

Thus, it is not a defense that the public official lacked the authority, power, or ability to perform the act for which the thing of value was given.  The Government did not need to prove that Eddie Pressley had the authority to make a final decision or take binding action on the matter at issue; it needed only to establish that Eddie Pressley took some official action, including making a recommendation to persons with ultimate decision making authority, in exchange for a thing of value.  *See  U.S. v. Evans*, 572 F.2d 455, 481 (5th Cir. 1978) ("Furthermore, it is immaterial that the donee-official's position is ministerial or subordinate, or even that he actually lacks the authority to perform an act to benefit the donor. *E. g.*, *United States v. Birdsall*, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1914)."); *cf. United States v. Carson*, 464 F.2d 424, 433 (2d Cir. 1972) (recognizing that the official act provision covers "any situation in which the advice or recommendation of a [public official] would be influential, irrespective of the [official]'s specific authority (or lack of same) to make a binding decision."); *United States v. Parker*, 133 F.3d 323, 326 (5th Cir. 1998) ("The term 'official act' encompasses use of government computer systems to

fraudulently create documents … even when the employee's scope of authority does not formally encompass the act"), *cert. denied*, 523 U.S. 1142 (1998); *United States v. Gjieli*, 717 F.2d 968, 973 (6th Cir. 1983) (holding that a defendant may be charged under Section 201 even though he "could not have accomplished the purposes for which he was bribed through his official position"), *cert. denied*, 465 U.S. 1101 (1984); *United States v. Heffler*, 402 F.2d 924, 926 (3d Cir. 1968) (upholding bribery conviction where the advice and recommendation of a government employee would be influential in securing the decision desired by the person offering the bribe, even though the employee did not have authority to make the final decision), *cert. denied*, 394 U.S. 946 (1969); *Wilson v. United States*, 230 F.2d 521 (4th Cir. 1956) (upholding bribery conviction where defendant was "free to make any recommendation he might see fit to make" despite no longer being directly in the chain of supervision of the regulation of insurance sales), *cert. denied*, 351 U.S. 931 (1956).

D.      Sufficiency of the Evidence.

Both Defendants argue that there was insufficient evidence to convict them as to any count.  (Docs. 111, 126, 129 at ¶¶ 11, 12, 14, 15, 16,17, and 18, and Doc. 130). Defendant Eurica Pressley individually argues that there was insufficient evidence of her "mental state at the time of the commission of the offenses charged" to convict

her of any count.  (Doc. 111).  Eddie Pressley individually argues that there was insufficient evidence to convict him as to Counts Three, Four, Five, Nine and Seventeen because there was allegedly insufficient evidence that he received bribes from Gopal Nair and Shaher Fawzi Audah such that the court should grant him acquittal as to those counts and order a new trial in that the court did not instruct the jury not to consider such evidence.  (Doc. 125).  Further, Eddie Pressley argues that "there was no evidence at trial that [he] acted in concert with any warranted contract officer and therefore [he] could not be guilty of any conspiracy under 18 U.S.C. § 371." (Doc. 129, ¶ 11).  Finally, Eddie Pressley argues that the evidence was insufficient to support his convictions because the Government "failed to prove at trial that the Unite[d] States had suffered any loss as a result of the bottled water, fence[,] or gravel contracts that were the subject of the Indictment, as amended." (Doc. 129, ¶ 12).

"In 'view[ing] the facts and draw[ing] all inferences in a light most favorable to the Government,' this Court finds 'that a reasonable trier of fact could find that the evidence established [that each Defendant was] guilty [of each count of conviction] beyond a reasonable doubt.'" *Battle*, 892 F.2d at 998, (internal citations omitted). Therefore, Defendant's motions for judgment of acquittal based upon insufficiency of the evidence are due to be denied.

15

The Defendants' motions for new trial that are based upon such arguments are due to be denied as well.  Specifically, there was ample evidence from which a reasonable jury could find that Eddie Pressley received bribes from Gopal Nair and Shaher Fawzi Audah, including co-conspirator testimony, e-mail messages, Army contracting and payment records, bank records, and wire transfer reports.

Additionally, to the extent that Eddie Pressley seeks a new trial based on the court's allowing evidence that Eddie Pressley received bribes from Gopal Nair and Shaher Fawzi Audah, counsel for Eddie Pressley did not state this objection or ask for this instruction at the final charge conference (which was held after the court heard argument on the Motion for Judgment of Partial Acquittal, as to which the court reserved ruling and therefore never definitively ruled prior to the final charge conference as to the requested instruction), or after the court instructed the jury,[6] and therefore such objection was waived.  Fed. R. Crim. P. 30(d).[7]

The Government was not required to prove "that [Eddie Pressley] acted in concert with any warranted contract officer [in order for him  to be found] guilty of

---

[6]  See doc. 124, pp.657-658 (final charge conference), and doc. 124, pp. 697-698 (after jury was instructed).

[7]  The court gave the instruction requested by Eurica Pressley regarding her required mental state.  Eurica Pressley nonetheless contends that the evidence was insufficient to prove this required mental state.

16

... conspiracy under 18 U.S.C. § 371" (doc. 129, ¶ 11).[8]  *See* Section III. C., *supra*.

It was stipulated at trial that Eddie Pressley was an Army Major and therefore was a "public official."  The Government presented ample evidence that, while he was an Army Major, Eddie Pressley arranged for Terry Hall ("Hall"), a defense contractor, to receive the blanket purchase agreement and related BPA calls for bottled water.  The record also establishes that Eddie Pressley arranged for Hall to receive a fence contract and a modification to Hall's BPA which benefitted Hall.  This evidence was sufficient to support the jury's finding that Eddie Pressley took an "official act" within the meaning of the bribery statute, notwithstanding the fact that he did not have a contracting warrant.

Finally, Eddie Pressley's argument that the evidence was insufficient to support his convictions because the Government "failed to prove at trial that the Unite[d] States had suffered any loss as a result of the bottled water, fence[,] or gravel contracts that were the subject of the Indictment, as amended" (Doc. 129, ¶ 12) also fails because the Government was not required to prove any such loss.[9]  *See United*

--------

[8]  However, this motion is also due to be denied because there was sufficient evidence at trial for a reasonable jury to find that Eddie Pressley was part of a conspiracy that included John Cockerham and others who did have such a warrant.

[9]  Further, there was sufficient evidence at trial that the United States suffered a loss because Terry Hall testified that the price of the bottled water was increased by the amount of the bribes.

*States v. Quinn*, 359 F.3d 666, 675 (4th Cir. 2004) ("It is not necessary for conviction under § 201(b) that the official act offered in exchange for the bribe be harmful to the government or inconsistent with the official's legal obligations.  The critical question is whether the government official solicited something of value with a corrupt intent, *i.e.*, in exchange for an official act." (internal citations omitted)).

E.     The Admission of Evidence of Obstruction

Eddie Pressley argues that the court "erred in allowing evidence of the uncharged crime of obstruction through the testimony of the witness Terry Hall concerning conversations that allegedly occurred between Terry Hall and Kermit Cruz and Terry Hall and the defendant [Eddie Pressley] that followed the search of John Cockerham's residence and Cockerham's subsequent arrest." (Doc. 129, ¶ 13). Eddie Pressley's objection falls apparently under FED. R. EVID. 403[10], as he argues that the admission of this evidence "was not probative of any of the charged offenses and further created unfair prejudice and confusion of the issues in the minds of the jurors." (*Id.*).

The Government, in its omnibus brief, has accurately set out the sequence of

---

[10]  Rule 403 provides: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

18

events related to the admission of this evidence.  (Doc. 41 at 27 - 31).  Accordingly, by not objecting on the basis of unfair prejudice at trial (except to testimony about a conversation Hall had with Kermit Cruz concerning a list or ledger that had been seized from co-conspirator John Cockerham's house), Eddie Pressley has waived this objection as to the balance of Hall's testimony.  *See* FED. R. EVID. 103(a)(1) (error may not be predicated on a ruling which admits evidence unless substantial right is affected and timely objection or motion to strike appears of record, stating specific ground for objection).

However, to the extent that Eddie Pressley's counsel did object on the basis of Rule 403 to Hall's testimony about the ledger, the court's ruling admitting the evidence was correct.  "'Rule 403 is an extraordinary remedy[,] which should be used only sparingly[,]' and the balance 'should be struck in favor of admissibility.'" *United States v. Edouard*, 485 F.3d 1324, 1344 n.8 (11th Cir. 2007) (quoting *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir.2006)).  The testimony was relevant.  It stated that a ledger or list had been found at John Cockerham's house and that Terry Hall's name was on it.  The only unfair prejudice alleged was that the jury might infer that Eddie Pressley's name was also on the list or that Terry Hall might say that Eddie Pressley's name was on the list.  (The Government proffered that Eddie Pressley's name was not on the list.)  Counsel for Eddie Pressley had the opportunity to examine

19

Terry Hall outside the presence of the jury about whether Eddie Pressley's name also was on the list.  Counsel chose not to do so.  There was no testimony elicited by the Government or by counsel for Eddie Pressley about Eddie Pressley's name being on, or not being on, the list.  The concern about an inference being drawn by the jury was merely speculation by counsel for Eddie Pressley and did not meet the standard for exclusion of this testimony under Rule 403.

Additionally, to the extent that a hearsay objection was made, the court offered to give a limiting instruction (that the jury could only consider the testimony for the purpose of the impact on the hearer) and to allow Pressley to ask Hall outside the presence of the jury if Pressley's name was also on the Cockerham ledger, so that Pressley would know how Hall would testify on cross-examination if asked about the ledger.  Counsel for Eddie Pressley accepted the court's proposal.  The court then delivered a limiting instruction.  However, Eddie Pressley's counsel did not question Hall outside the presence of the jury but instead allowed Hall to complete his direct testimony on the obstruction scheme, and then cross-examined Hall on that subject. As a result, Eddie Pressley waived his right to seek post-trial relief based upon a claim that this testimony should have been excluded as hearsay.  *See United States v. Preston*, 608 F. 2d 626, 635-36 (5th Cir. 1979) (defendant waived objection to exclusion of testimony of government witness by compromising with judge on

limited use of the testimony instead of pressing objection), *cert. denied*, 446 U.S. 940

(1980).  *See also*, *United States v. Horsfall*, 552 F.3d 1275, 1283-84 (11th Cir.2008),

*cert. denied*, 129 S.Ct. 2034, 173 L.Ed.2d 1120 (2009) (a knowing and affirmative

withdrawal of a previously articulated objection constitutes a waiver that precludes

appellate review of the alleged error, and the plain error doctrine is inapplicable.)

F.    Newly Discovered Evidence

Eddie Pressley seeks a new trial on the basis that "his trial counsel failed to

disclose to him that John Cockerham had volunteered during the week of January 31,

2011[,] to testify at trial."  (Doc. 129, ¶ 9).  In support of this argument, Eddie

Pressley attaches an affidavit from John Cockerham.  However, there is nothing new

in the affidavit.  John Cockerham's name and knowledge of the facts involved was

known to counsel for Eddie Pressley.  In effect, Eddie Pressley is asking this court to

second-guess his trial counsel's "decision" not to call a convicted co-conspirator at

Eddie Pressley's trial.  This is basically an ineffective assistance of counsel claim,

disguised as a newly discovered evidence claim.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), governs an ineffective assistance of counsel claim.

> According to *Strickland*, first, the defendant must show that counsel's
> performance was deficient. This requires showing that counsel made
> errors so serious that counsel was not functioning as the "counsel"

21

> guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir.1998).

Thus, *Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.  This court declines to find that Eddie Pressley's trial counsel's decision not to call John Cockerham as a witness was not a "reasonable professional judgment."  Further, this court declines to find that the "facts" asserted in Cockerham's affidavit likely would

have resulted in a different jury verdict.  The motion for new trial on the basis of newly discovered evidence is due to be denied.

IV.    Conclusion.

For the reasons stated above, the court finds that the Defendants' motions (docs. 111, 125, 126, 129, 130, 131, and 132) are due to be, and hereby are, **DENIED**.

**DONE** and **ORDERED** this the 25th day of April, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge